**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS WESTERN DIVISION**

| | | |
|---|---|---|
| Danielle O., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 25 cv 50526 |
| v. | ) | |
| | ) | Magistrate Judge Margaret J. Schneider |
| Frank Bisignano | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Danielle O., seeks review of the final decision of the Commissioner of the Social Security Administration denying her disability benefits. For the reasons set forth below, Plaintiff's motion to reverse the Commissioner's final decision [14] is granted, and the Commissioner's request to affirm the decision [18] is denied.

**BACKGROUND**

**A. Procedural History**

On December 7, 2022, Danielle O. ("Plaintiff") filed a Title II application for disability and disability insurance benefits, alleging a disability beginning on May 24, 2022. R. 17. The Social Security Administration denied her application initially on October 31, 2023, and upon reconsideration on May 9, 2024. *Id*. Plaintiff filed a written request for a hearing and on June 7, 2024, a telephonic hearing was held by Administrative Law Judge ("ALJ") Lana Johnson where Plaintiff appeared and testified. *Id*. Plaintiff was represented by Attorney Kylee D. Miller. *Id.* Ray Burger, an impartial vocational expert ("VE"), also appeared and testified. *Id*.

On December 20, 2024, the ALJ issued her written opinion denying Plaintiff's claim. R. 17-29. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1-6. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [7]. Now before the Court are Plaintiff's motion to reverse and remand the Commissioner's decision [14], the Commissioner's response brief [18], and Plaintiff's reply [19].

**B. The ALJ's Decision**

In her ruling, the ALJ applied the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 24, 2022, the alleged onset date. R. 19. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; degenerative disc disease of the cervical spine; degenerative joint disease of the right hip; obesity; and coronary artery disease. *Id*. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 21-22.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except that she can lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk 2 hours in an 8-hour workday; sit 6 hours in an 8-hour workday; occasionally climb ladders, ropes or scaffolds; frequently climb ramps and stairs, balance, kneel, crouch and crawl; and occasionally stoop. R. 22-26. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. R. 27. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as address clerk, document preparer, or office clerk. R. 27-28. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time since May 24, 2022. R. 28.

**STANDARD OF REVIEW**

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted)). While substantial evidence is "more than a mere scintilla, . . . the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citation omitted). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024) (internal quotation marks and citation omitted). An ALJ "need not specifically address every piece of evidence but must provide a logical bridge between the evidence and [the] conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (internal quotation marks and citation omitted); *see also Warnell*, 97 F.4th at 1054; *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("While we have never required an ALJ to address every piece of evidence or testimony in the record, the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits.").

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) failing to construct a logical bridge from record evidence to the ALJ's RFC determination, and (2) failing to set forth a legally sufficient subjective symptoms evaluation. The Court finds that the ALJ erred by relying on a lack of neurological deficits to reject Plaintiff's limitations in sitting, and by failing to properly analyze the medical opinions of Dr. John Peterson, M.D. and Dr. Bharati Jhaveri, M.D., for consistency and supportability as required by 20 C.F.R. § 404.1520c(c). Therefore, the Court remands this matter for further proceedings.

### A. Sitting Limitation and Reliance on Lack of Neurological Deficits

In her decision, the ALJ found that Plaintiff had the RFC to perform "sedentary work" with specific limitations, including sitting for 6 hours in an 8-hour workday. R.22. In her RFC analysis, the ALJ summarized Plaintiff's medical records from April 2022 through February 2024, noting, for example, that the Plaintiff's primary complaints centered around the Plaintiff's lower back pain, summarizing Plaintiff's consultation with a neurosurgeon regarding potential back surgery, an internal medicine consultative examination which centered on the Plaintiff's movement limitations, and MRI imaging of the lumbar spine. The ALJ concluded, as to Plaintiff's limitations regarding sitting: "However, given the absence of any significant neurological deficits, the claimant's allegation that she cannot sit for prolonged periods is not objectively documented. The undersigned finds that the claimant could reasonably sit for 6 hours in an 8-hour workday." R. 25.

Plaintiff argues that the ALJ did not explain how she determined that the "lack of neurological deficits" was inconsistent with the Plaintiff's sitting limitation. As a result, Plaintiff contends that the ALJ failed to comply with SSR 96-8p in determining Plaintiff's RFC. Plaintiff also contends that the ALJ cited no medical authority in support of her conclusion that sitting limitations are connected to neurological deficits, and therefore failed to explain how this lack of neurological deficits was more probative than contrary evidence, including Plaintiff's MRI results and other abnormal objective medical findings. In response, Defendant counters that the ALJ was not required to credit Plaintiff's subjective complaints and properly relied on the opinions of state agency medical consultants John Peterson, M.D. and Bharati Jhaveri, M.D., who found Plaintiff capable of sedentary work.

The ALJ relied solely on the absence of significant neurological deficits to reject Plaintiff's claim that she cannot sit for prolonged periods of time and to instead find that these claims are inconsistent with the record. This determination was not backed by any further explanation.[1] *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 621 (7th Cir. 2010) ("An ALJ must explain why he does not credit evidence that would support strongly a claim of disability, or why he concludes that such evidence is outweighed by other evidence.") The ALJ's unsupported conclusion leaves the Court to surmise why the ALJ found the absence of neurological deficits dispositive on this issue.

[1] As discussed below, the ALJ also relied on the state agency medical opinions to support the RFC, but the ALJ's analysis of those opinions was also flawed.

It appears that the ALJ drew her reference to a lack of neurological deficits from a treatment note summarized earlier in the ALJ's order. Specifically, the ALJ referenced a neurosurgery consultation with Jerrel Boyer, D.O., for the Plaintiff's radicular lower back pain. The ALJ noted that "Dr. Boyer recommended an anterior lumbar interbody fusion at L5-S1 but also noted that because of 'the absence of neurological deficit,' surgery was 'optional'". R. 24. Other than briefly mentioning Dr. Boyer's statement in a narrative summary of the Plaintiff's medical reports, the ALJ failed to establish how Dr. Boyer's statement about neurological deficits supported her conclusion that Plaintiff had the ability to sit for 6 hours. While Dr. Boyer's statement indicates that surgery is optional for Plaintiff, the inference that it also indicates that Plaintiff can sit for an extended amount of time despite chronic back pain, requires the ALJ's analysis. Instead, the Court is left to speculate regarding how this evidence was consistent with the state agency consultants' medical opinions that Plaintiff is capable of sedentary work, and with the ALJ's conclusion.

It is possible that the ALJ relied on the other objective medical evidence to reach this conclusion. However, it is not the ALJ's role to interpret technical medical records and make diagnoses. The ALJ should "rely on expert opinions instead of determining the significance of particular medical findings themselves." *See, e.g., Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014); s*ee also Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021) ("[A]n ALJ 'must not succumb to the temptation to play doctor'") (internal citation omitted). The ALJ points to no medical or expert testimony in the record that makes a connection between Plaintiff's lack of neurological deficits and the finding that Plaintiff's claimed sitting limitations are inconsistent with the record. It is true that courts are advised to review ALJ decisions holistically and consider the ALJ's discussion throughout the decision. *See Zellweger v. Saul*, 984 F.3d 1251, 52 (7th Cir. 2021). However, the ALJ did not do enough here to bridge the gap between the ALJ's earlier narrative summary and her conclusion; the ALJ must provide the Court with sufficient analysis to prevent speculation as to her rationale for the RFC. *See Sara N. v. Saul*, No. 20 CV 50006, 2021 WL 4712711, at *3 (N.D. Ill. Jan. 11, 2021), ("[W]e can make educated guesses about what the ALJ was implying [in the narrative summary], but they are still guesses in the end."). *See also Michael Z. V. Berryhill*, No. 17-CV-50195, 2019 WL 13094919, at *6 (N.D. Ill. June 3, 2019) ("…a narrative is different than an analysis. The former is not enough; the later is required.").

**B. Analysis of State Agency Medical Opinions**

State agency medical consultants Dr. Peterson and, upon reconsideration, Dr. Jhaveri, found Plaintiff capable of sedentary work. The ALJ found these opinions to be persuasive and relied on them in support of his RFC determination. Plaintiff contends that the ALJ erred by failing to explain how these opinions were consistent with or supported by the record, as required by 20 C.F.R. § 404.1520c. Defendant contends that Plaintiff's argument in this regard is merely a reprise of Plaintiff's first argument as to the sitting limitation analysis. The ALJ's reliance on the opinions of the state agency medical consultants could have otherwise provided substantial evidence in support of the RFC determination, despite the previously discussed error; however, the Court finds that the ALJ's analysis of the medical opinions was flawed.

After briefly mentioning Dr. Peterson's physical assessment conducted on October 31, 2023, and Dr. Jhaveri's conclusion on reconsideration, the ALJ's analysis of the state agency examiners' opinions consisted of the following:

> These prior administrative medical findings are persuasive as they are consistent with the overall evidence as outlined above documenting the claimant's limited and conservative treatment for her lower back symptoms with no significant neurological deficits and no objective documentation of medical necessity for any kind of ambulatory assistive device.

R. 26.

The ALJ was required to evaluate Dr. Peterson's and Dr. Jhaveri's opinions under the regulations set out in 20 C.F.R. § 404.1520c. Under these regulations, the ALJ evaluates the persuasiveness of all medical source opinions using the following factors: supportability, consistency, relationship with the claimant, specialization, and any other factors which tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors to be considered in evaluating how persuasive an ALJ finds a medical source's medical opinions, and as a result, an ALJ must discuss how she considered those factors. 20 C.F.R. § 404.1520c(b)(2); *see also Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022).

To find a medical opinion supportable, it must be based on "the objective medical evidence and supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* For an opinion to be consistent, it must be consistent with the record. 20 C.F.R. § 404.1520c(c)(2). "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*.

The ALJ's consideration of the state agency medical consultants' opinions lacks sufficient explanation or analysis. "[A]n ALJ evaluating opinion evidence must consider the regulatory factors and explain why a medical opinion is supported or unsupported by, and consistent or inconsistent with, the broader record." *Patrice W. v. Kijakazi*, No. 20 C 02847, 2022 WL 2463557, at *3 (N.D. Ill. July 6, 2022) (internal quotation omitted).

Here, as to consistency, the ALJ provided minimal references to conservative treatment and lack of objective evidence to support ambulatory devices, but provided no explanation. As for supportability, the ALJ said nothing at all. And the ALJ continued to persist in her reference to lack of neurological deficits, without explaining the significance of this absence. The Court is unable to provide a thorough review of the ALJ's decision without the benefit of this required analysis. It should be noted, however, that the Court is not concluding that the ALJ's finding that the opinions of Drs. Peterson and Jhaveri were persuasive was improper. The Court is only concluding that because the ALJ did not provide the required analysis of these opinions, the Court cannot say that these opinions were properly examined on this record.

In light of the error as to the analysis of Plaintiff's sitting limitation and the incomplete analysis of the opinions of Dr. Peterson and Jhaveri, the Court finds that the ALJ's RFC was not supported by substantial evidence. The case is remanded for further consideration of the issues

referenced in this order. Plaintiff has raised other arguments, but further analysis of these issues is not necessary because they would not change the result here and can be addressed more fully on remand. Plaintiff's counsel should raise all such issues with the ALJ on remand, both in a pre-hearing brief and at the administrative hearing. Failure to explicitly raise these issues may result in a waiver if this case is again appealed to this Court. In remanding this case, the Court is not representing that the ALJ must rule in a specific way or that the ALJ's rationales, if supported by appropriate evidence and made after a reasonable review of the record, could not be relied upon for the finding that Plaintiff was not disabled.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion to reverse the Commissioner's final decision [14] is granted, and the Commissioner's request to affirm the decision [18] is denied.

Date: October 26, 2026

ENTER:

Margaret J. Schneider

United States Magistrate Judge